IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Almia J. McCrief,<br><br>                Plaintiff,<br><br>vs.<br><br>Wachovia Bank a/k/a Wells Fargo Bank)<br>and Bank of America,<br><br>                Defendants. | Civil Action No. 2:12-CV-72-RMG-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendants' separate motions to dismiss. [Doc. 46, 58.] The plaintiff has pled claims for fraud, breach of contract, civil conspiracy, conversion, and pursuant to the South Carolina Uniform Commercial Code. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

**BACKGROUND**

It is not apparent from the Complaint, but the defendant Bank of America generously offers backdrop to the plaintiff's case. The defendant represents that the plaintiff was one of many unfortunate victims of a large scale fraud perpetrated by non-party Capital Consortium Group, LLC ("CCG) upon numerous citizens of the State of South Carolina. The plaintiff, in this case, is attempting to recover an alleged $200,000 in cashier's checks which the plaintiff purchased from Defendant Wachovia Bank a/k/a Wells Fargo Bank ("Wells Fargo") and delivered to CCG, the payee, in 2006 and 2007, and which were subsequently deposited into CCG's account at Bank of America. (Compl. at 2-4.)

Specifically, the plaintiff has alleged that between 2006 and 2007, he purchased seventeen cashier's checks from Wells Fargo totaling $200,000, each of which shows CCG as payee. (See Compl. at 4 & n.3, ¶¶ 8 & 9.) The plaintiff then delivered each of the checks to CCG who subsequently deposited them into CCG's accounts at Bank of America.

Somehow, not apparent to the Court from the pleadings, the plaintiff did not receive the benefit of these checks from CCG but would hold defendants liable.

On September 5, 2007, this Court entered an Order in *In re: A Matter Under Investigation by Grand Jury Number 1*, No. 3:07-mc-135, regarding the forfeiture of property owned or controlled by Tony Pough, Joseph Brunson, and Timothy McQueen, principles of CCG, including assets in CCG's account at BofA. [Doc. 46 Ex. 1.] The September 2007 Order appointed Beattie B. Ashmore, Esquire as Receiver for those individuals and ordered him to take immediate possession of all their assets. *Id.* at 2. Persons who considered themselves a victim of the fraud were required to mail a completed proof of claim form to the Receiver, and any exceptions to this requirement required approval of this Court. [Doc. 46 Ex. 3 at 3.][1]

## **APPLICABLE LAW**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible

---

[1] The Court does not interpret these Orders as barring any independent legal claim against the defendants. The proof of claim procedure certainly barred any claims for assets of the above individuals, made after a certain date, but it does not appear that non-participating victims would somehow be barred from bringing any legal action.

2

claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Stated differently, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)).

## DISCUSSION

The plaintiff's response to the motions to dismiss [Doc. 83] was made out of time. It was due February 8, 2013.  [Doc. 76.] It was not actually placed in the mail, to the Court, until February 9, 2013, and received, on February 11, 2013. [See Doc. 83.]

Moreover, the filing  is not responsive to the pending motions to dismiss, in any respect.  Instead, it appears almost exclusively as a motion for reconsideration of the Opinion of the Fourth Circuit Court of Appeals rejecting his interlocutory appeal. [See Doc. 83.] In fact, it states, "As the following further to support Pro Se Appellant-McCrief's PETITION for Writ of Certiorar - and/or Motion for Relief/ AND/or Leave to except MOTION TO VACET ALL this Appeal Court's decisions Order/1-22-2013; Mandate/1-17-2013; Judgement & Opinion 12-26-2012; **and in RESPONSE to the lower U.S.DISTRICT COURT'S MAGISTRATE Judge HENDIRCKS' continued! (Unauthorized ORDERS** . . . ." [Doc. 83 at 2 (all emphasis in original).] The filing is also a continuing challenge to this Court's Order denying remand and other various procedural machinations in the case, including reassignment of the matter to Judge Gergel.  It is not, however, any substantive response to the defendants' motions to dismiss.

For all of these reasons, the plaintiff remains out of compliance with this Court's order that he make a response to the pending motion to dismiss, by February 8, 2013. [Doc. 76.]

3

Even as the plaintiff continues with docket activity, in a sense, it is not in any respect meaningful participation or prosecution of his case. It is recommended, therefore, that this action be dismissed for lack of prosecution and for failure to comply with this Court's orders, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and the factors outlined in *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 920 (4th Cir.1982). *See Ballard v. Carlson*, 882 F.2d 93 (4th Cir. 1989).

As an alternative recommendation, the Court would say the following concerning the merits of the plaintiff's putative claims in light of the applicable Rule 12 standard.

**I.     Breach of Contract**

The defendants first contend that the plaintiff has not pled the necessary elements of a breach of contract claim against them. Under South Carolina law, a claim for breach of contract requires a showing of (1) a binding contract entered into by the parties, (2) breach or unjustifiable failure to perform, and (3) damages suffered by the plaintiff as a direct and proximate result of the breach. See *Fuller v. Eastern Fire & Casualty Ins. Co.*, 124 S.E.2d 602, 610 (1962). Concerning Defendant Bank of America, there is no reasonable basis alleged for a binding contract between the plaintiff and that bank. The plaintiff has not alleged that he is a depositor at Bank of America; that he has ever entered into a contract with Bank of America; or that he is the payee of the cashier's checks at issue. The Court does not see how the Complaint can be read to allege that Bank of America entered into, or breached, any contract with the plaintiff.

As to Defendant Wells Fargo, the Complaint contains some allegation. (Compl. ¶¶ 3-5.) The Complaint is not easily understood in this respect. But, the plaintiff refers to a consumer account agreement (Compl. at 2 & n.1), which Wells Fargo seems to agree is its own [see Doc. 58 at 6]. The plaintiff appears to contend that he was not given notice, as allegedly required by the consumer account agreement, of the bank's decision to freeze his account. Wells Fargo's only real rejoinder is that the plaintiff has not actually specifically

4

alleged, in his Complaint, that Wells Fargo froze the plaintiff's account. But, by reasonable implication, that is necessarily what he seems to allege. Whether it actually did or not, is of no moment.

The Court would stop to confess that the plausibility of the plaintiff's allegations are in serious doubt. And, the undersigned can hardly decipher the allegations. But, at this stage, the Court would not test the accuracy of the averments. The fact that a contractual agreement has been identified and a mostly intelligible description of a breach, alleged, seems enough at this procedural posture. To do more seems to invite a kind of evidentiary overreach, not allowed, or worse, a biased assumption by the Court based on the difficulty of the pleading's form.

Accordingly, it is recommended that the plaintiff's breach of contract claim be dismissed as to Bank of America but allowed as to Wells Fargo.

**II.     Fraud**

The defendants also contend that the plaintiff has failed to properly plead any fraud claim. A claim for fraud under South Carolina law requires a plaintiff to establish nine separate elements: "(1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Ardis v. Cox*, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993). "A complaint is fatally defective if it fails to allege all nine elements of fraud." *Id.*; *see* Fed. R. Civ. P. (9)(b) (stating "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake").

The Court understands the plaintiff to accuse the defendants of conspiring to accept cashier checks that had no payee endorsement. (Compl. ¶¶ 5, 8.) He says multiple times that Bank of America stamped its name on the back of cashier checks lacking any payee

5

endorsement. *Id.* He also plainly states that this action is the basis for his fraud claim. (Compl. ¶ 5.) Whether or not the stamping on the back of the cashier check constitutes a "representation" of Bank of America for purposes of a fraud claim is immaterial. Even if it were, the plaintiff has not alleged that such a "representation" was made to him; that he was ignorant of its deficiency; or that he relied on such "representation. *Ardis*, 431 S.E.2d at 269. In fact, quite the opposite, he would contend that he did not learn of any such actions until his own research revealed it four years later. (Compl. at 2 n.1, 5.)

The Court does not see any fraudulent representation made to the plaintiff, upon which he relied. The claim should be dismissed as to both defendants.

### III.     Civil Conspiracy

The defendants next contend that the plaintiffs' civil conspiracy claim should be dismissed. They propose two reasons. The defendants argue that the plaintiff has not pled any additional acts in furtherance of the conspiracy or special damages.

To prove a claim for civil conspiracy, a plaintiff must show: "(1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint." *Id.* "Moreover, because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action." *Id.*

Concerning additional acts in furtherance of the conspiracy, as stated, they must be something more than a reassertion of other claims within the Complaint. *Hackworth*, 682 S.E.2d at 874. The Court tends to consider, as qualifying, the plaintiff's averment that Wachovia "through its hired said new! official(s), since, and before the date, NOVEMBER 2011, and since or before the year 2007, did intentionally conspired with the defendant "Bank of America officials/and/or its official 'Valerie R. Greene' . . . ." (Compl. ¶ 8.) It is

certainly a generalized accusation. But, it is something beyond that which is previously alleged in the Complaint – that their was coordination between the defendants in the cashing of invalid cashier's checks.[2] Here, he expressly attempts to contend that it was a collusive effort. How it was collusive is not precisely recited. Discovery, if allowed, might reveal it. The pleading is narrowly sufficient.

As to the sufficiency of the plaintiff's special damages pleading, however, Rule 9(g) of the Federal Rules of Civil Procedure requires items of special damages to be specifically stated. Fed. R. Civ. P. 9(g). As far as the Court can tell, the plaintiff has not used the term of art "special damages" and does not seem to have pointed to any which might qualify. (See generally Compl.) "Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct." *Hackworth*, 682 S.E.2d at 875 (citing *Loeb v. Mann* , 18 S.E. 1, 2 (S.C. 1893)). "General damages are inferred by the law itself, as they are the immediate, direct, and proximate result of the act complained of." *Id.* (citing Sheek v. Lee, 345 S.E.2d 496, 497 (S.C. 1986)). "Special damages, on the other hand, are not implied at law because they do not necessarily result from the wrong." *Id.* The plaintiff has not listed anything that qualifies as a "special damage." He has requested the amount of the cashier's checks, which is an actual damage, and a $1 Million dollar punitive award. (Compl. ¶ 6.)

The pleading is insufficient. "To allow a plaintiff to recover on a claim of civil conspiracy without alleging special damages would render the element meaningless." *Id.* at *4. The plaintiff has simply not suggested any unanticipated injury following from the

---

[2]A"civil conspiracy cannot be found to exist when the acts alleged are those of employees or directors, in their official capacity, conspiring with the corporation." *Pridgen v. Ward*, 705 S.E.2d 58, 62 (S.C. Ct. App. 2010). As a result, "no conspiracy can exist if the conduct challenged is a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Id.* However, although a corporation cannot conspire with itself, "the agents of a corporation are legally capable, as individuals, of conspiracy among themselves or with third parties." *Id.* Such is essentially alleged, here. (Compl. ¶ 8.)

7

conduct of the defendants. Out of caution and in light of Fourth Circuit instruction, the plaintiff, however, should be allowed "the opportunity to amend the complaint to properly plead special damages." *Id.* (citing James v. Pratt and Whitney, 126 Fed. Appx. 607, 610-11 (4th Cir. 2005)). Because of the plaintiff's course of dealing in this matter, the Court would not recommend that such leave be allowed for the conspiracy claim alone. It is unlikely to be unprofitable. But, because the breach of contract claim may continue, some opportunity to also cure this claim seems conservative.

## IV.     **Uniform Commercial Code Claims**

The defendants generously read the plaintiff's Complaint to include claims under Articles 3 and 4 of the South Carolina Uniform Commercial Code, which govern actions involving checks. *See Flavor-Inn, Inc. v. NCNB Nat'l Bank of S.C.*, 424 S.E.2d 534 (S.C. Ct. App. 1992). The plaintiff, himself, however, makes no such appeal. He consistently alleges contract, conspiracy, and fraud actions. He cites no code section.

Even still, it seems doubtful that he has standing for any UCC action. South Carolina has made clear that "[a] 'cashier's check' is a bill of exchange or draft drawn by a bank upon itself. The bank is both the drawer and drawee and . . . the purchaser is not a party." *Steele v. Victory Savings Bank*, 368 S.E.2d 91, 92 (S.C. Ct. App. 1998). After a cashier's check is issued, it "becomes the primary obligation of the bank rather than the purchaser and the purchaser ordinarily has no right to countermand payment." *Id.* After a purchaser delivers a cashier's check to the payee, the payee becomes legal owner of the check. *See id.* at 296, 368 S.E.2d at 94. Because the purchaser of a cashier's check lacks ownership of the check after delivery, the purchaser has no standing to pursue claims on the check under the Uniform Commercial Code. *See Cassello v. Allegiant Bank*, 288 F.3d 339, 342 (8th Cir. 2002) (stating purchaser of cashier's check has no action under UCC against depository bank); *Lewis v. Tele. Employees Credit, Union*, 87 F.3d 1537, 1553 (9th Cir.

1996)(holding purchaser of cashier's check lacked standing to bring conversion and breach of warranty claims against depository bank).

These authorities seem certainly to insulate Bank of America, as the depository bank, against any action. To the extent they would not as against the payee bank, Wells Fargo, the Court cannot discern what UCC allegation the plaintiff means to make against it.

The Court would emphasize that the plaintiff's core contention is against Bank of America for depositing checks without a payee endorsement. Regardless, of the plaintiff's standing, that accusation appears ineffective. The South Carolina Uniform Commercial Code provides that "depositary bank becomes a holder of the item at the time it receives the item for collection if the customer at the time of delivery was a holder of the item, whether or not the customer indorses the item . . . ." S.C. Code § 36-4-205(1). In other words, the stamp and receipt by Bank of America makes for effective endorsement. *See id.* (official comment). The plaintiff cannot sue for any violation of the UCC based on acceptance of an ineffectively endorsed cashier's check, therefore.

As discussed, the plaintiff leaves all of these arguments unrejoined. And, not only is the Court without the plaintiff's adversarial advocacy, but South Carolina jurisprudence is not replete with guidance. While far from binding on this Court, it is at least worth noting that a South Carolina Court of Common pleas order, on identical facts as alleged here, concerning the same CCG scheme, found the plaintiff purchaser without standing and dismissed any UCC causes on these and other grounds. [Doc. 46 Ex. 5.]

Lastly, where a particular provision of Article 3 or 4 comprehensively addresses a particular subject, the Articles displace the common law. *See Hitachi Elec. Devices, Inc. v. Platinum Tech., Inc.*,170, 621 S.E.2d 38, 41 (S.C. 2005); S.C. Code Ann. § 36-1-103. For instance, the South Carolina Court of Appeals has held that S.C. Code Ann. § 36-3-419 displaces common law torts for conversion and negligence. *Flavor-Inn*, 424 S.E.2d at 536. Accordingly any claim the plaintiff has also made for conversion, should be dismissed.

9

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is RECOMMENDED that the defendants' motions to dismiss [Docs. 46, 58] should be DISMISSED for a lack of meaningful participation by the plaintiff and in violation of this Court's Orders.  Alternatively, the Court would reservedly recommend a partial DENIAL of such motions.  Specifically, the Court would still recommend dismissal, as to both defendants, of any claims pursuant to the South Carolina Uniform Commercial Code, and for fraud, based on the plaintiff's failure to state any claim.  As to the plaintiff's claim for breach of contract, as against Defendant Bank of America, the Court would also recommend dismissal, for failure to state a claim.  As part of its alternative recommendation, however, the Court would not recommend dismissal of the plaintiff's breach of contract claim, against Defendant Wells Fargo, or the civil conspiracy claim, as against both defendants.  In that regard, if the district court does not adopt the principal recommendation of dismissal, the plaintiff should be afforded fifteen (15) days to amend his pleadings to identify any special damage he may have suffered.  **The plaintiff is reminded that any amended pleading he files will replace his original complaint and, therefore, should be as comprehensive as the original complaint with the addition of any other statements he would make about damages, if any**.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

February 12, 2013
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).